UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LORENE ROCCON THOMPSON        :
                              :
        v.                    :    C.A. No. 09-033S
                              :
UBS FINANCIAL SERVICES,       :
INC., et al.                  :

**MEMORANDUM AND ORDER**

This is an action brought under the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiff Lorene Roccon Thompson challenges the denial of long-term disability ("LTD") benefits. Defendants are Plaintiff's former employer, UBS Financial Services, Inc. ("UBS"), and Life Insurance Company of North America d/b/a CIGNA Group Insurance ("LINA"). While employed by UBS, Plaintiff participated in an LTD benefits plan sponsored by UBS and administered/insured by LINA. Plaintiff received LTD benefits initially under an "own occupation" disability definition but her LTD benefits were later discontinued by LINA in February 2008, applying an "any occupation" disability standard triggered after twenty-four months. Plaintiff challenges LINA's decision as "arbitrary and capricious and an abuse of discretion" and contends that, because LINA both determines LTD eligibility and pays LTD benefits, LINA's decision was infected by a structural conflict of interest. (Document No. 1, ¶ 35).

Pending before me for determination (28 U.S.C. § 636(b)(1)(A); LR Cv 72) is Plaintiff's Amended Motion to Compel Discovery, to Strike Objections, and for Attorney's Fees (Document No. 26) filed pursuant to Fed. R. Civ. P. 37. A hearing was held on November 23, 2009.

**Discussion**

"ERISA benefit-denial cases typically are adjudicated on the record compiled before the plan administrator. Because full-blown discovery would reconfigure that record and distort judicial review, courts have permitted only modest, specifically targeted discovery in such cases." Denmark v. Liberty Life Assurance Co. of Boston, 566 F.3d 1, 10 (1st Cir. 2009) ("Denmark II"). The First Circuit has cautioned that "some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." Id. (quoting Liston v. Unum Corp. Officer Sev. Plan, 330 F.3d 19, 23 (1st Cir. 2003)).

Plaintiff seeks discovery through interrogatories and document requests as to (1) the applicable LTD policy; (2) LINA's claims handling policy regarding the absence of objective, clinical findings to support a claim; and (3) the structural conflict issue.[1]

1.  **The Applicable LTD Policy**

There is a factual ambiguity in the Administrative Record as to the applicable definition of disability. On August 27, 2007, LINA wrote to Plaintiff regarding her LTD claim and advised her that her insurance contract defines disability as follows:

> Under the terms of your contract, an employee will be considered Disabled if because of Injury or Sickness, he or she is unable to perform all the essential duties of his or her occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and after Disability Benefits have been payable for 24 months, he or she is unable to perform all

---

[1] Plaintiff also seeks discovery of LINA's basis for its "inconsistent" positions with regard to her eligibility for Social Security disability benefits and ineligibility for disability benefits under its LTD policy. In Interrogatory No. 11, Plaintiff requests that LINA "explain the basis" for this claimed inconsistency. This is an improper discovery request in an ERISA case. See Achorn v. Prudential Ins. Co. of Am., No. 08-125, 2008 WL 4427159 at *4 (D.Me. Sept. 25, 2008) (refusing to order insurer to "explain away" the Social Security decision response to an interrogatory and noting that Plaintiff can assert the argument based on the record.). Thus, Plaintiff's Motion is DENIED as to Interrogatory No. 11, and LINA's Objections are sustained.

> the material duties of any occupation for which he or she may
> reasonably become qualified based on education, training, or
> experience, <u>or</u> solely due to Injury or Sickness, he or she is unable to
> earn more than 80% of his or her Indexed Covered Earnings.

(Administrative Record ("AR") at 362 (emphasis added)). In response to Document Request No. 14, LINA produced "the Summary Plan Description ("SPD") in effect as of plaintiff's date of disability" which defines disability, in relevant part, as follows:

> After disability benefits have been payable for 24 months, you still will be considered disabled if:
>
> 1)   Because of injury or sickness, you are unable to perform all the material duties of any occupation for which you may reasonably become qualified based on education, training or experience; <u>or</u>
>
> 2)   Solely due to injury or sickness, you are unable to earn more than 80% of your indexed covered earnings.

(Document No. 26-3 at 25 (emphasis added)).

On February 14, 2008, LINA wrote to Plaintiff and advised her that it was discontinuing her LTD benefit at the end of the twenty-four month "own occupation" disability period. (AR at 484-485). It also quoted the applicable policy definition of disability, in relevant part, as follows:

> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of any occupation for which or or she is, or may reasonably become, qualified based on education, training or experience and solely due to Injury or Sickness; <u>and</u>
>
> 2. unable to earn 80% or more of his or her Indexed Earnings.

(AR at 482 (emphasis added)). In this case, LINA supplemented the Administrative Record with a policy amendment (Amendment No. 03) containing a signature date of May 30, 2007 and a stated

-3-

effective date of January 1, 2005.  The amendment contains the disability definition included in LINA's February 14, 2008 letter.  (AR at 883, 890).  The version using the conjunction "and" presents a higher burden of proving disability than the version using "or," and Plaintiff alleges in her Complaint that LINA "wrongfully attempted to amend the Long Term Disability Policy's terms by changing the 'or' to 'and' by policy amendments stating an effective date of January 1, 2005." (Document No. 1, ¶ 27).  At the hearing, LINA's counsel candidly indicated that the issue was "confusing" and that he was "investigating" it on his end as well.  Accordingly, information as to the applicable LTD policy is relevant to Plaintiff's claims in this case and necessary to allow the Court to determine the applicable definition of disability.

Plaintiff seeks to compel further responses to Document Requests Nos. 12, 13 and 14, and Interrogatory No. 10.  In Request No. 12, Plaintiff seeks the policy and all amendments from its creation through the present.  LINA objected but responded that the group long-term disability policy and "relevant" amendments have been previously produced as part of the Administrative Record.  As noted above, the Administrative Record contains various policy documents which may well include all those "relevant" to this dispute.  However, out of an abundance of caution, LINA is ordered to supplement its response to either (1) produce the Policy and <u>all</u> amendments from January 1, 2005 through the present or (2) to represent that there are no such responsive documents beyond those in the Administrative Record.  As to Request No. 13, LINA did not object and responded that it "has no documents responsive to this request."  At the hearing, it was suggested that UBS, Plaintiff's former employer and LINA's co-Defendant, may have responsive documents. Thus, Plaintiff is granted leave to serve Document Request No. 13 on UBS.  However, if any such documents are actually in the "possession, custody, or control" of LINA, LINA shall produce them

to Plaintiff. As to Request No. 14, LINA objected but produced the SPD in effect as of Plaintiff's date of disability (August 30, 2005). However, because of the "confusing" state of the record regarding the applicable definition of disability, LINA shall supplement its response to either (1) produce the SPD and <u>all</u> amendments from January 1, 2005 through the present or (2) to represent that there are no such responsive documents beyond the SPD already produced. Finally, as to Interrogatory No. 10, LINA shall answer the Interrogatory in full as to Amendment No. 3 to Policy No. LK 030545 (AR at 883-891) and LINA's objections are otherwise sustained at this point.

### 2. Claims Handling Policy

In Document Request No. 8, Plaintiff seeks LINA's "claims manual(s), claims-handling manual(s), operating manual(s), book(s) of operating knowledge, and other documents that set forth the protocols for responding to, investigating, negotiating, and approving or denying Claims for Benefits, in effect from January 1, 2005 to the present." LINA objected on several grounds including relevance and over breadth. Plaintiff claims that the documents requested are relevant to her "claim that LINA adopted a long-term disability criterion that does not appear in the [SPD] or the policy." (Document No. 30 at 3). In particular, Plaintiff alleges in her Complaint that LINA "improperly imposed a criterion that does not exist in the Plan or the [LTD] Policy: whether the medical diagnoses of Plaintiff's injuries or sicknesses were supported by objective, clinical findings." (Document No. 1, ¶ 18).

LINA raises two primary grounds for its Objection. First, LINA accurately points out that the Request, on its face, is unlimited in scope and broadly seeks production of all claims handling documents without any attempt to tailor the Request to the issues presented in this case or the parameters of discovery permissible under Fed. R. Civ. P. 26(b)(1). Second, LINA contends that

there is no support in the Administrative Record for Plaintiff's contention that LINA improperly imposed a requirement that her medical diagnoses be supported by objective, clinical findings. In its February 14, 2008 claim denial, LINA acknowledged that Plaintiff's treating physician had diagnosed Chronic Fatigue Syndrome ("CFS") and Meniere's Disease. (AR at 483). However, it further noted, in an ambiguous double negative, that it was "not disputing that your conditions do not exist." (AR at 484). It then went on to conclude that "the evidence on file does not support your limitations are so severe that they preclude you from performing all the material duties of any occupation." Id. This appears to be an attempt to follow the reasoning of Denmark v. Liberty Life Assurance Co. of Boston, 481 F.3d 16, 37 (1st Cir. 2007), which "draws a distinction between requiring objective evidence of the diagnosis, which is impermissible for a condition such as [CFS or] fibromyalgia that does not lend itself to objective verification, and requiring objective evidence that the plaintiff is unable to work, which is allowed." The Administrative Record is far from clear on this point. The claim denial letter references an "independent peer review" performed by Dr. Broghammer and states that "[i]t was determined the information submitted did not contain any clinical evidence in support of a condition of severity which would preclude you from performing the material duties of a full-time sedentary occupation." (AR at 483). However, in his underlying report dated February 5, 2008, Dr. Broghammer does note the absence of objective findings regarding Plaintiff's inability to work but he also concludes that "there is no clinical evidence that supports the diagnosis of chronic fatigue" and that "the record contains multiple references to subjective symptomatology with little or no clinical evidence." (AR at 489).

In Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 123 (1st Cir. 2004), the First Circuit noted that ERISA's regulations entitle claimants to access to "relevant" documents (29 C.F.R. §

2560.503-1(h)(2)(iii)) and that "[w]here the plan in question provides disability benefits, the Department of Labor defines 'relevant' documents to include 'statement[s] of policy or guidance with respect to the plan concerning the denied...benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.'" (Citing 29 C.F.R. § 2560.503-1(m)(8)(iv)). The First Circuit recognized that these regulations were intended to "make clear that the claimant should receive any information demonstrating that, in making the adverse benefit determination, the plan complied with its own processes for ensuring appropriate decisionmaking and consistency." Id. Following Glista, District Judge Gertner of the District of Massachusetts recently held that such documents are also "subject to discovery in the district court." Weed v. Prudential Ins. Co. of Am., No. 08cv10969-NG, 2009 WL 2835207 at *3 (D. Mass. Aug. 28, 2009).

This precedent does not, however, support Plaintiff's broad request for all manuals and documents related to "approving or denying Claims for Benefits." The ERISA regulation by its terms "constrain[s] the scope of production" to any "statement of policy or guidance with respect to the plan [and] concerning the denied...benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination." Kruk v. Metropolitan Life Ins. Co., No. 3:07-CV-01533, 2009 WL 1481543 at *6 (D. Conn. May 26, 2009). In discussing the relevance of such discovery, Magistrate Judge Kravchuk of the District of Maine explained that if an internal document existed that favored the claimant's receipt of benefits, "the fact that it was disregarded would be powerful evidence of an arbitrary and capricious claims determination." Cannon v. UNUM Life Ins. Co. of Am., 219 F.R.D. 211, 214 (D.Me. 2004).

Applying this precedent, I sustain LINA's objections in part but GRANT Plaintiff's Motion to Compel as to Document Request No. 8 but only as to documents constituting statements of policy or guidance for claims handling personnel which relate to disability benefit claims based on CFS and Meniere's Disease in effect from January 1, 2005 to the present. LINA also objected on the ground that Document Request No. 9 sought confidential and proprietary information and, at the hearing, requested that if it was compelled to produce any such documents that it be done under an appropriate confidentiality order. That request is granted. See Weed, 2009 WL 2835207 at *4 (ordering production of internal claim guides subject to a confidentiality order). If the parties are unable to agree on an appropriate confidentiality order, LINA shall submit a proposed form of order to the Court for consideration.

### 3.   Structural Conflict Discovery

Plaintiff contends that Interrogatories 2 through 9 and 12 through 15; and Document Requests 1 through 5, 7, 9 through 11 and 15; appropriately seek discovery relevant to the structural conflict issue. Plaintiff argues that conflict of interest discovery is warranted under Glenn and devotes six pages of her brief to a general discussion of the topic. (Document No. 26 at 9-15). Plaintiff does not, however, discuss the issue in the context of her particular discovery requests as required by Local Rule Cv 37(a).[2]

In this case, it is undisputed that LINA both administers the LTD plan in question, in part, by determining if a participant is eligible for benefits and, if so, pays the benefits out of its pocket. Because of the potential financial tension in these dual functions, this scenario has been held to

---

[2] Local Rule Cv 37(a) requires that a motion to compel state the interrogatory or document request in dispute, the response made, if any, and the reasons why the movant maintains that the response is inadequate.

constitute a "structural conflict of interest." Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2348 (2008). The First Circuit has described a structural conflict as a potential influence in the decision-making process as distinguished from an actual conflict where a decision is in fact motivated by a conflicting interest. Denmark, 566 F.3d at 5 and n.2. It has also instructed that "courts are duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts." Id. at 9.

Where the administrative record does not contain the procedures which the plan administrator has used to prevent or mitigate the effect of structural conflict, conflict-oriented discovery may be permitted to reveal those procedures. Id. at 10. However, "such discovery must be allowed sparingly and, if allowed at all, must be narrowly tailored so as to leave the substantive record essentially undisturbed." Id. (emphasis added). In Weed, supra, Judge Gertner ruled on the proper scope of conflict discovery in a similar ERISA case. Applying Glenn and Denmark II, Judge Gertner granted an ERISA plaintiff "'targeted discovery,' mindful of the fact that such discovery 'must be narrowly tailored' to determine the extent of [the insurer's] conflict of interest." 2009 WL 2835207 at *3. In particular, she limited discovery to the following: (1) documents addressing steps taken by the insurer to reduce bias; (2) discovery addressing the insurer's relationship with its third-party medical consultant but sufficiently narrow to determine any history of biased claims administration; and (3) documents, if available, regarding the numbers of claims and ratios of denials for the third-party medical consultant, as well as its instructions to the consultant regarding written reports. Id.; see also Mattox v. LINA, 625 F. Supp. 2d 1304, 1309 (N.D. Ga. 2008) (reopening discovery to permit parties to "collect any documents and other evidence that would help

the Court determine the nature, extent, and effect on the decisionmaking process of LINA's conflict of interest").

I find Judge Gertner's conclusion in Weed to be a reasonable interpretation of Glenn and Denmark II and apply it to the instant discovery dispute. Doing so, I reach the following conclusions regarding the specific discovery requests in dispute here.

### A. Interrogatory No. 2

LINA's Objections are sustained, and Plaintiff's Motion to Compel is Denied. Plaintiff is also advised that MES's invoice for its services on Plaintiff's claim is included in the administrative record at page 486.

### B. Interrogatory Nos. 3-5

LINA's Objections are stricken, and Plaintiff's Motion to Compel is Granted.

### C. Interrogatory Nos. 6, 8, 12-14

LINA's Objections are stricken, but, its Answers are deemed responsive and Plaintiff's Motion to Compel is Denied.

### D. Interrogatory Nos. 7, 9

LINA's Objections are stricken, and Plaintiff's Motion to Compel is Granted.

### E. Interrogatory No. 15

LINA's Objections are sustained, and Plaintiff's Motion to Compel is Denied.

### F. Request No. 1

LINA's Objections are sustained, and Plaintiff's Motion to Compel is Denied.

### G. Request No. 2

LINA's Objections are sustained, and Plaintiff's Motion to Compel is Denied.

**H.     Request No. 3**

LINA's Objections are sustained, in part, and Plaintiff's Motion to Compel is Denied, except that LINA is Ordered to produce any documents containing instructions or guidelines given to MES regarding the preparation of its "peer review" reports or the review of disability cases involving CFS or Meniere's Disease.

**I.     Request Nos. 4-5**

LINA's Objections are stricken, and Plaintiff's Motion to Compel is Granted.

**J.     Request Nos. 7, 9-11**

LINA's Objections are sustained, and Plaintiff's Motion to Compel is Denied.

**K.     Request No. 15**

LINA's Objections are stricken, and Plaintiff's Motion to Compel is Granted.

**4.     Plaintiff's Motion for Attorneys' Fees**

Plaintiff moves for an award of fees under Fed. R. Civ. P. 37(a)(5)(A). Although Plaintiff's counsel quotes part of the rule in his brief, he omits any discussion of the enumerated exceptions. (Document No. 26 at 15). The Rule provides that the Court must <u>not</u> order the payment of fees if:

>    (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
>    (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
>    (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

While the Court is not pleased with LINA's approach to discovery in this case, Plaintiff is not without blame, as there appears to have been little effort on her part to tailor her discovery requests

to the issues presented in this ERISA case. Further, Plaintiff's counsel's efforts to confer with Defendants' counsel to obtain the requested discovery without court action are underwhelming. See Fed. R. Civ. P. 37(a)(1). Plaintiff's counsel received the discovery responses in dispute on Friday, October 16, 2009 and at 5:15 p.m. on Monday, October 19, 2009, notified Defendants' counsel by email that he intended to file a motion to compel on Wednesday and asked whether LINA would "abandon its refusal to respond to discovery without requiring my resort to a motion to compel." (Document No. 30-2). The instant Motion to Compel (a sixteen-page brief)[3] was filed less than forty-eight hours later at 2:00 p.m. on Wednesday, October 21, 2009. Other than the email ultimatum, Plaintiff's counsel does not describe any other efforts to confer with Defendants' counsel to resolve this dispute without Court intervention. Balancing these factors, as well as Plaintiff's partial success on the Motion to Compel and the developing nature of the law on discovery in ERISA cases, the Court concludes that an award of fees and costs to Plaintiff is not warranted in this instance.

Accordingly, for the reasons discussed herein, Plaintiff's Amended Motion to Compel Discovery, to Strike Objections, and for Attorney's Fees (Document No. 26) is GRANTED in part and DENIED in part as provided herein. Defendant LINA shall respond as ordered within thirty (30) days pursuant to Local Rule Cv 37(b).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 17, 2009

---

[3] Furthermore, as previously noted, Plaintiff's Motion to Compel is not in the form required by Local Rule Cv 37(a) which has further complicated the Court's review of this discovery dispute.